UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-cv-22752-GAYLES/TORRES

**SANDRA TORUNO**,

    Plaintiff,

v.

**CHI-ADA CORPORATION, et al.**,

    Defendants.
_____/

## ORDER

**THIS CAUSE** comes before the Court on Plaintiff's Partial Motion for Summary Judgment (the "Motion"). [ECF No. 67]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons that follow, the Motion is granted.

### BACKGROUND[1]

Defendant Chi-Ada Corporation ("Chi-Ada") provides janitorial services to public, private, and governmental institutions in Florida, Georgia, and New York and sells cleaning products across the United States. [ECF No. 68 ¶¶ 2, 4]. During the relevant time-period, Chi-

---

[1] The relevant undisputed facts are taken from Plaintiff's Statement of Undisputed Material Facts in Support of Her Motion for Partial Summary Judgment ("Plaintiff's SOMF") and its attached exhibits. [ECF No. 68]. Defendants failed to file a response to Plaintiff's SOMF that complies with Local Rule 56.1. In fact, Defendants failed to respond in any meaningful way to Plaintiff's asserted facts. A statement of material facts submitted in opposition to a motion for summary judgment "shall correspond with the order and the paragraph numbering format used by the movant . . ." *Id.* S.D. Fla. L.R. 56.1(b)(2)(A). Local Rule 56.1(c), which governs the effect of a nonmovant's failure to controvert a movant's statement of undisputed facts, provides: "[a]ll material facts in any party's Statement of Material Facts may be deemed admitted unless controverted by the other party's Statement of Material Facts, provided that: (i) the Court finds that the material fact at issue is supported by properly cited record evidence; and (ii) any exception under Fed. R. Civ. P. 56 does not apply." *Id.* R. 56.1(c). As a result, the Court accepts the facts set forth in Plaintiff's SOMF as true. *See Azze v. Dade Medical College, Inc.*, No. 15-cv-24175, 2017 WL 880426, at * 3 (S.D. Fla. Mar. 6, 2017) (deeming movant's statement of undisputed material facts admitted where non-movant failed to respond in compliance with Local Rule 56.1).

Ada employed more than two employees and had an annual gross revenue over $500,000. *Id.* ¶¶ 2, 5. Defendant Bartholomew Okoro ("Okoro") is the sole corporate officer, manager, registered agent, and owner of Chi-Ada and supervised and controlled Chi-Ada's daily operations. *Id.* ¶¶ 6-7.

In May of 2013, Defendants hired Plaintiff Sandra Toruno ("Plaintiff") as a janitor. *Id.* ¶ 8. In the three years leading up to this action, Plaintiff was a shift supervisor for Defendants. *Id.* Her duties included ensuring that all shifts were covered, supervising the work of janitors, ordering supplies, and issuing discipline. *Id.* ¶ 17. She did not have the authority to hire or fire other employees. *Id.* As a supervisor, Plaintiff was compensated on a salary basis. Her salary was determined by her manager, approved by Okoro, and was intended to compensate her for 40 hours of work per week. *Id.* ¶ 9. Defendants did not maintain time records for Plaintiff after she became a supervisor. *Id.* ¶ 21.

In January of 2019, Chi-Ada was awarded a five-year contract with Miami-Dade County (the "County") to provide janitorial services for the County's Metrorail and Metro Mover systems in exchange for a monthly compensation of $456,002.64 (the "Contract"). *Id.* ¶ 10. The Contract required Defendants to maintain a schedule with a set number of employees per shift per group. *Id.* ¶ 11. On January 4, 2019, the County asked Okoro to provide the name, contact number, and work shift hours for each supervisor for each group. *Id.* ¶ 12. On January 8, 2019, Okoro identified Plaintiff as one of the supervisors assigned to Group A who would work the morning shift Monday through Friday. *Id.* ¶ 13. On January 10, 2019, Okoro clarified that Plaintiff's shift would be from 5:00 a.m. to 2:00 p.m. Monday through Friday. *Id.* ¶ 14. The County rejected Plaintiff's proposed shifts as they were not compliant with the Contract. *Id.* On January 12, 2019, Plaintiff's supervisor advised Plaintiff that, in order for Defendants to comply

with the Contract, Plaintiff's shift would extend to 3:00 p.m. *Id.* ¶ 15. Okoro then submitted a new list to the County which identifies Plaintiff's schedule to be from 5:00 a.m. to 3:00 p.m. Monday through Friday. *Id.*

From January 12, 2019, to February 29, 2020, Plaintiff worked the 5:00 a.m. to 3:00 p.m. shift. *Id.* ¶ 16, 18. Her paystubs from this time period reflect that, despite working ten-hour days, she was paid for 40 hours per week. *Id.*

From March of 2020, through March 7, 2021, Plaintiff continued to work as a supervisor, this time as part of a new contract Defendants had with the County. During this time-period, Plaintiff was issued two checks per pay period. *Id.* ¶ 20. One check was to compensate Plaintiff for 40 hours of work per week, and the other was to compensate her at her regular, rather than overtime, rate for any additional hours worked. *Id.*

On July 28, 2021, Plaintiff filed this action against Defendants asserting claims under the Equal Pay Act (Count I) and the Fair Labor Standards Act (the "FLSA") (Counts II and III). [ECF No. 1]. In particular, Plaintiff alleged that Chi-Ada violated the Equal Pay Act by paying her lower wages than her male counterparts and that Chi-Ada and Okoro violated the FLSA by failing to pay her overtime wages. [ECF No. 1].

Plaintiff now moves for partial summary judgment as to her FLSA claims arguing that she is entitled to judgment as a matter of law as to (1) FLSA enterprise coverage during the relevant time period; (2) Okoro's status as Plaintiff's "employer" under the FLSA; (3) Defendants' failure to raise an applicable exemption under the FLSA; and (4) liability under the FLSA. The Court agrees.[2]

---

[2] As noted earlier, Defendants failed to properly respond to Plaintiff's SOMF. Moreover, Defendants' response to the legal arguments in the Motion consists of three sentences wherein Defendants simply state they did not violate the FLSA. This is woefully inadequate. Finally, the Court notes that Defendants' response is replete with spelling and formatting errors.

**LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citation omitted). A fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004) (citation omitted). "Where the material facts are undisputed and all that remains are questions of law, summary judgment may be granted." *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1138 (11th Cir. 2016), *vacated on other grounds*, *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 2016 WL 11503064, at *1 (11th Cir. May 31, 2016).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). Furthermore, conclusory allegations will

4

not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion. *Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (citation omitted).

## DISCUSSION

The FLSA requires that covered employees be paid overtime. *See* 29 U.S.C. §§ 206, 207. Overtime wages must be paid at a rate of one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). To establish a violation of the FLSA for failure to pay overtime wages, a plaintiff must show that (1) the defendant employed her, (2) she was engaged in commerce or employed by an enterprise engaged in commerce, and (3) the defendant did not pay her the requisite overtime compensation. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 n. 68 (11th Cir. 2008)

**A.      Enterprise Coverage**

To invoke the FLSA's protections, "an employee must first demonstrate that he is 'covered' by the FLSA." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011). An employee can show coverage in two ways: "individual coverage," *i.e.*, that she was engaged in commerce or in the production of goods for commerce, or "enterprise coverage," *i.e.*, that the Defendant is an enterprise engaged in commerce or in the production of goods for commerce. *See* 29 U.S.C. § 207(a)(1). Here, Plaintiff argues that she was employed by an enterprise engaged in commerce. The Court agrees.

For "enterprise coverage" to apply, the employer must have "employees engaged in commerce or in the production of goods for commerce, or . . . employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." 29 U.S.C. § 203(s)(1)(A)(i). In addition, the employer must have annual gross volume

of sales made or business done in excess of $500,000.00 during the plaintiff's employment. 29 U.S.C. § 203(s)(1)(A)(ii).

As demonstrated by the uncontroverted facts, Chi-Ada is an enterprise covered by the FLSA. It has two or more employees, provided janitorial services across three states, and sold cleaning supplies throughout the United States. ECF No. 65 ¶¶ 2-4. Moreover, during the relevant time period, Chi-Ada's gross sales exceed $500,000 annually. *Id.* ¶¶ 5, 10. Accordingly, the Court finds that there is coverage under the FLSA.[3]

**B.  Defendants Employed Plaintiff**

Plaintiff also argues that, in addition to Chi-Ada, Okoro is an "employer." Under the FLSA, an "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). An "employee" is defined as "any individual employed by an employer," with certain exceptions. *Id.* § 203(e)(1). To "employ" under the FLSA is "to suffer or permit to work." *Id.* § 203(g).

A covered employee may make a claim against any person who "(1) acts on behalf of that employer and (2) asserts control over conditions of the employee's employment." *Josendis*, 662 F.3d at 1298. The uncontroverted evidence establishes that Okoro was president and owner of Chi-Ada and involved in the day-to-day operation of the company. [ECF No. 65 ¶ 6-7]. He hired Plaintiff, determined her rate of pay, and controlled her schedule. *Id.* ¶ 7, 9. Accordingly, the Court finds that Okoro is an "employer" under the FLSA such that he is independently liable for the asserted violations.

---

[3] In their response to the Motion, Defendants did not dispute that there is coverage under the FLSA.

## C. Defendants Waived Any Exemptions

The FLSA's overtime wage provisions do not apply to certain exempt employees. "The employer bears the burden of establishing that an employee is exempt, and we construe exemptions narrowly against the employer." *Pioch v. IBEX Engineering Services, Inc.*, 825 F.3d 1264, 1268 (11th Cir. 2016). In their Amended Answer to the Complaint,[4] Defendants did not specifically assert that Plaintiff is an exempt employee as an affirmative defense. [ECF No. 33, 36]. Accordingly, any defense that Plaintiff is an exempt employee is waived. *See Latimer v. Roaring Toyz, Inc*, 601 F.3d 1224, 1239 (11th Cir. 2020) ("Failure to plead an affirmative defense generally results in a waiver of that defense.").

## D. Liability

As set forth above, the undisputed material facts establish as a matter of law that Defendants employed Plaintiff and that she is a covered employee under the FLSA. The Court also finds that Plaintiff has established that Defendants failed to pay her the requisite overtime compensation during the relevant time-period.

### 1. Relevant Time-Period

"The statute of limitations for claims seeking unpaid overtime wages generally is two years, but if the claim is one 'arising out of a willful violation,' another year is added to it." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, (11th Cir. 2008) (quoting 29 U.S.C. § 255(a)). A violation of the FLSA is willful when the employer "either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." *Id.* Here, the

---

[4] Defendants amended their Answer and Affirmative Defenses four times. For the first three attempts, Defendants filed joint answers, which the Court struck for pleading deficiencies. *See* [ECF Nos. 8, 19, 24]. Chi-Ada filed its Fourth Amended Answer on January 18, 2022, [ECF No. 33], but Okoro failed to join. Finally, on January 19, 2022, Okoro filed his Fourth Amended Answer on January 19, 2022, [ECF No. 36], which is nearly identical to Chi-Ada's Fourth Amended Answer.

uncontroverted facts establish that Defendants, at a very minimum, showed reckless disregard about whether their conduct was prohibited by the FLSA. Defendants have operated a large enterprise for over 25 years. [ECF No. 65 ¶ 1]. Moreover, Defendants represented to the County in January 2019 that Plaintiff would work an extra hour per day to comply with the contract. *Id.* ¶¶ 12-16. Finally, from March 2020 through March 7, 2021, Defendants issued two checks per pay period. *Id.* ¶ 20. These are all indications that Defendants were aware of the FLSA's requirement for overtime wages. *Id.* ¶ 20. At the very least, Defendants exhibited a reckless disregard for the law. Accordingly, this action is governed by the three-year limitations period. Plaintiff filed her Complaint on July 28, 2021, therefore the limitations period began on July 28, 2018.

        2.        Plaintiff is Entitled to Overtime Compensation

The record reflects that from January 12, 2019, to February 29, 2020, Plaintiff worked from 5:00 a.m. to 3:00 p.m.—ten hours per day—five days per week. [ECF No. 65 ¶ 16]. However, Plaintiff's paystubs during this period show that she was only compensated at her regular salary for 40 hours per week. *Id.* ¶ 18. Indeed, the paystubs indicate 80 hours for each two-week time-period. Moreover, from March 2020 through March 7, 2021, Plaintiff worked at least 64 hours per week. *Id.* ¶ 20. However, she was not paid overtime wages for the excess hours.

Defendants fail to meaningfully rebut Plaintiff's evidence that she worked in excess of 40 hours per week but was not paid adequate overtime wages. Indeed, Defendants did not maintain time records for Plaintiff. *Id.* ¶ 21.

> [I]n situations where the employer's records cannot be trusted and the employee lacks documentation, the Supreme Court held "that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." The burden then becomes the employer's, and it must bring forth either evidence of the precise amount of

work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."

*Allen v. Board of Public Education for Bibb Cnty.*, 495 F.3d 1306, 1316 (11th Cir. 2007) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), superseded by statute on other grounds.). The Court finds that Plaintiff has met her burden of establishing that she performed work for which she was not properly compensated. Defendants have produced no evidence to negate the inferences which can be drawn from Plaintiff's evidence. Accordingly, Plaintiff shall be entitled to an award of damages.[5]

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Partial Motion for Summary Judgment, [ECF No. 67], is GRANTED.

2. Summary judgment is entered in favor of Plaintiff and against Defendants as to liability on Plaintiff's claims for violations of the FLSA (Counts II and III).

3. Within ten (10) days of the date of this Order, Plaintiff shall file a memorandum detailing the amount of her damages under the FLSA claims.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 6th day of April, 2023.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

[5] Because the Court finds that the uncontroverted facts establish that the Defendants' violations of the FLSA were willful, Plaintiff is entitled to liquidated damages. *See Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008) ("Under the FLSA[,] a district court generally must award a plaintiff liquidated damages that are equal in amount to actual damages.").